UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO THE FOLLOWING CASES:

| | |
|---|---|
| *Towles v. Comair, et al.* | No. 5:06-cv-429-KSF |
| *Harris v. Comair, et al.* | No. 5:06-cv-292-KSF |
| *Hunt v. Comair, et al.* | No. 5:06-cv-400-KSF |

**OPINION AND ORDER**

This matter is before the Court on the motion of Comair, Inc., et al. ("Comair") [DE #539] to dismiss claims of the above Plaintiffs for loss of consortium, pre-impact fear, and hedonic and loss of enjoyment of life damages as a matter of law. Except for the hedonic and loss of enjoyment of life damages, these damage claims by other Plaintiffs were recently dismissed as not authorized under Kentucky law [DE #1279]. *In re: Air Crash at Lexington, Kentucky, August 27, 2006*, 2008 WL 80059 (E.D. Ky. 2008). Each Plaintiff above argues that the substantive law of a state other than Kentucky should apply to their claims. Plaintiff Hunt also moves for Application of New Mexico Wrongful Death Damages Law to his case [DE #1358].

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Randy Towles was a resident of Watertown, New York, when he died in the crash of Comair Flight 5191 during takeoff in Lexington, Kentucky. His widow filed this action in New York based on diversity jurisdiction and alleged a cause of action under New York's wrongful death statute. The case was transferred to this Court following Comair's motion to transfer venue pursuant to 28 U.S.C. § 1404(a). [DE #1078, pp. 1-2]. Plaintiff Towles notes that Defendant Comair, Inc. conducts substantial business as a common carrier for hire in New York and even has a "concentrated focus" there. [*Id.* at 11]. She further notes that Defendant Delta Air Lines ("Delta") filed a Chapter 11 Voluntary Bankruptcy Petition in New York, which was pending at the time of the

crash of Flight 5191. [*Id.* at 11-12]. She argues that a conflict of laws analysis is required to determine whether Kentucky law or New York law applies to her damages claims.

Plaintiff Towles notes there is not a conflict at the present time with respect to her non-pecuniary loss of spousal consortium claim [DE #1078, pp. 3-4]. If Kentucky law were to be extended to include such claims, a conflict would arise. Regarding her claim for pre-impact fright or terror, this Court determined that Kentucky law under *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920 (Ky. 2007), does not support the claim. *Air Crash at Lexington*, 2008 WL 80059 at *8-9. Plaintiff Towles notes that New York law, such as *Shu-Tao Lin v. McDonnell Douglas Corp*, 742 F.2d 45 (2d Cir. 1984), allows claims for pre-impact damages, which creates a conflict with Kentucky law. Comair admits that there is a conflict and that New York's choice of law rules apply [DE #1175, p. 5]. Comair disagrees, however, that New York provides the substantive law on the issue of pre-impact damages.

Erik Harris was a citizen of the Commonwealth of Kentucky when he died in the Comair 5191 crash. Diversity jurisdiction is not available because the principal place of business of Comair, Inc. is Kentucky. [DE #143, Comair Answer, ¶ 3]. This case is pending pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a). Plaintiff Harris notes that corporate conduct by Comair and Delta "likely occurred also in Ohio and/or Georgia" and that the law of those states may apply to his claims [DE #1147, p. 6].

George C. Brunacini was a citizen of New Mexico when he died in the Comair 5191 crash. His personal representative, Plaintiff Hunt, filed the wrongful death action in this Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332. [Complaint ¶¶ 3, 6]. New Mexico allows broader recovery for hedonic damages than does Kentucky. He argues that New Mexico law should apply to the claims in light of the decedent's significant contacts with New Mexico, its interest in full compensation to its citizens, the fortuity of the location of an airplane crash, and the modern rule

of "most significant contacts" utilized by the majority of states [DE #1358]. He further argues that there are valid reasons to displace the law of the forum [DE # 1449].

**II.  ANALYSIS**

    **A.  Standards**

"Under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a court ordinarily must apply the choice of law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred. " *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n. 8 (1981). "In diversity cases, the district court is to apply the choice of law rules of the state in which the court sits." *Andersons, Inc. v. Consol, Inc.,* 348 F.3d 496, 501 (6th Cir. 2003). "A federal court exercising supplemental jurisdiction is bound to apply the law of the forum state, including its choice of law rules." *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). Plaintiff Towles' case was transferred from New York, and Comair admits that New York choice of law rule governs the analysis [DE #1175, p. 6]. In Harris and Hunt, Kentucky's choice of law rule applies in light of the supplemental and diversity jurisdiction in the respective cases.

    1.  <u>New York Choice of Law Rule</u>

New York courts have adopted an "interest-analysis" approach that considers the law of the jurisdiction having the greatest interest in resolving the particular issue.[1] *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 196 (1985). In tort cases where "the conflicting rules involve the appropriate standards of conduct, rules of the road, for example, the law of the place of the tort 'will usually have a predominant, if not exclusive concern.'" *Id.* When the conflicting rules relate to allocating losses from tortious conduct, such as those limiting damages in wrongful death actions,

---

[1] New York also decides conflict of law issues under an issue-specific approach, called depecage, under which "different substantive issues in a tort case may be resolved under the laws of different states where the choices influencing decisions differ." *Simon v. Philip Morris, Inc.*, 124 F.Supp2d 46, 75 (E.D.N.Y. 2000).

3

the jurisdiction where the injury occurred "has at best a minimal interest in determining the right of recovery or the extent of the remedy in an action by a foreign domiciliary." *Id.* at 198.

        2.      <u>Kentucky Choice of Law Rule</u>

Kentucky applies different choice of law rules, depending on whether the claim involves a tort or a contract. In contract cases, Kentucky applies the test of "which state has the most significant relationship to the transaction and the parties." *Lewis v. American Family Ins. Group*, 555 S.W.2d 579, 581-82 (Ky. 1977); *Poore v. Nationwide Mut. Ins. Co.*, 208 S.W.3d 269, 271 (Ky. Ct. App. 2006). In tort cases, Kentucky does not apply the most significant relationship test. "The conflicts question should not be determined on the basis of a weighing of interests ... but simply on the basis of whether Kentucky has enough contacts to justify applying Kentucky law." *Adam v. J. B. Hunt Transport, Inc.*, 130 F.3d 219, 230 (6th Cir. 1997). *See also Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) ("[I]f there are significant contacts – not necessarily the most significant contacts – with Kentucky, the Kentucky law should be applied").

**B.**    **Plaintiff Towles' Claims**

New York law allows recovery for pre-impact fear by the decedent. *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 53 (2d Cir. 1984) ("We conclude that New York law does permit recovery for a decedent's pre-impact fear...."). Kentucky law does not. *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 929 (Ky. 2007) ("any contact must precede the emotional distress before recovery is permissible"). Analysis under New York's choice of law rule is required to determine whether the substantive law of New York or Kentucky applies to these claims.

New York's interest analysis was described as follows:

> The New York Court of Appeals has defined "interest analysis" as requiring that "the law of the jurisdiction having the greatest interest in the litigation will be applied and... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict."

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377 (2d Cir. 2006) (quoting *Schultz*, 65 N.Y.2d at 197).

1.   Neumeier Rules and the Parties' Arguments

In *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972), the court adopted three rules to provide guidance in guest statute choice-of-law decisions, and those rules have subsequently been applied to other loss-allocating cases. *See, e.g., Cooney v. Osgood Machinery,* 81 N.Y.2d 66 (1993) (statutes permitting and barring contribution claims against an employer for personal injury damages); *Barkanic v. General Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957 (2d Cir. 1991) (limitation on damages in wrongful death case); *Dorsey v. Yantambwe*, 276 A.D.2d 108, 715 N.Y.S.2d 566 (2000) (vicarious liability in wrongful death action).

The first *Neumeier* rule applies when the parties share a common domicile. "Where the conflicting rules at issue are loss allocating and the parties to the lawsuit share a common domicile, the loss allocation rule of the common domicile will apply." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519 (1994). "'The second *Neumeier* rule addresses "true" conflicts,' where the parties are domiciled in different States with conflicting loss-distribution rules and the accident occurs in a State in which a party is domiciled." *Yantambwe*, 276 A.D.2d at 111 (quoting *Cooney).* The third *Neumeier* rule applies when the accident does not occur in a State where a party is domiciled and provides that "[n]ormally, the applicable rule of decision will be that of the State where the accident occurred, but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier,* at 128.

Plaintiff Towles' argument regarding the applicability of New York law focuses on the contacts the parties have with the state of New York [DE #1078, pp. 10-15]. She notes that her domicile and that of the decedent is New York, and that the action was filed in New York. The situs of the accident is Kentucky, and Comair's principal place of business is Kentucky.[2] Delta Air Lines'

---

[2] Plaintiff considers the place of incorporation of the Defendants, but Comair correctly points out that, under New York law, the domicile of a corporation for purposes of choice of law analysis is its principal place of business. *Yantambwe*, 276 A.D.2d at 111. [DE #1175, p. 6].

5

principal place of business is Georgia. Plaintiff Towles argues that New York's interest in providing wrongful death recovery for its domiciliary outweighs any interest of Kentucky in applying its "impact rule" to corporations domiciled in Kentucky. *Id.* at 12.

With respect to the *Neumeier* factors and the second rule, Plaintiff argues that not all Defendants are domiciled in Kentucky and that both Comair and Delta do substantial business in New York. Accordingly, she argues that "Defendants should not automatically be able to avail themselves of the protections which Kentucky law might otherwise afford them." *Id.* at 14. She also urges this Court to consider the third *Neumeier* rule that the situs of the tort may be displaced as the governing law if it "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Id.* at 15.

Comair replies that Defendants Comair, Inc., Comair Services, Inc. and Comair Holdings, LLC have principal places of business in Kentucky and the "locus" of the tort was in Kentucky. [DE #1175, p. 6]. It relies on the interpretation of the second *Neumeier* rule in *Cooney* that "when the driver's (defendant's) conduct occurred in the State of domicile and that State would not impose liability, the driver should not be exposed to liability under the law of the victim's domicile." *Cooney*, 81 N.Y.2d at 73. Accordingly, Comair argues that Kentucky law applies to Plaintiff's claim of pre-impact fear against Comair. With respect to Defendant Delta, it argues that the third *Neumeier* rule applies and that Kentucky law should be applied as the locus of the tort [DE #1175, pp. 7-8].

       2.      Interpretations of the *Neumeier* Rules

One of the leading applications of New York's interest analysis and the *Neumeier* rules is *Schultz.* The injured plaintiffs were domiciled in New Jersey and the parties assumed the locus of the tort was New York. *Id.*, 65 N.Y.2d at 192, 195. The domicile of the defendant Boy Scouts was New Jersey; the domicile of the defendant Franciscan Brothers was Ohio. The conflict was between the law of New Jersey, which recognized charitable immunity, and the law of New York, which did not. The court noted that previous cases had rejected "indiscriminate grouping of

6

contacts" and instead applied "the law of the jurisdiction having the greatest interest in the litigation." *Id.*, 65 N.Y.2d at 197. "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* Applying the first *Neumeier* rule, the court held that New Jersey law applied to claims against the defendant Boy Scouts because it was the common domicile of the parties. *Id.* at 199-200.

Claims against the Franciscan Brothers were analyzed separately, and the third *Neumeier* rule applied because plaintiffs were domiciled in New Jersey, the defendant in Ohio, and the locus of the tort was New York. *Id.* at 201. Rather than apply the law of the locus of the tort suggested by the rule, however, the court held that New Jersey's charitable immunity law should apply as that would further New Jersey's "interest in enforcing the decision of its domiciliaries to accept the burdens as well as the benefits of that State's loss-distribution tort rules" and its interest in charitable activities in the state. *Id.* The court said the substantive law purposes of New York would not be frustrated "because New York has no significant interest in applying its own law to this dispute." *Id.* The court noted that when loss-allocation rules were involved, "the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy in an action by a foreign domiciliary." *Id.* at 198.

In *Cooney*, a Missouri resident was injured at a Missouri plant by a machine sold by a New York sales agent, Osgood. Cooney sued Osgood in New York, and Osgood brought a contribution claim against Cooney's employer, among others. Missouri law shielded employers from direct claims and contribution claims, whereas New York permitted them. The court said: "the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way." *Id.*, 81 N.Y.2d at 74. The court then held:

> This is a true conflict in the mold of *Neumeier's* second rule, where the local law of each litigant's domicile favors that party, and the action is pending in one of those jurisdictions. Under that rule, the place of injury governs, which in this case means that contribution is barred.

*Id.*, 81 N.Y.2d at 76.

In *Barkanic v. General Administration of Civil Aviation of the People's Republic of China*, 923 F.2d 957 (2d Cir. 1991), citizens of the District of Columbia and New Hampshire were killed in the crash of a plane in China. Representatives of their estates brought an action in New York against CAAC, a Chinese government agency providing air services to passengers traveling to or from airports within China. CAAC moved for partial summary judgment based on Chinese law limiting an airline's liability for wrongful death of a non-citizen to $20,000. The court applied New York choice of law analysis and said "it appears to us that New York courts would now apply the *Neumeier* rules to *all* post-accident loss distribution rules, including rules that limit damages in wrongful death cases." *Id.* at 963 (emphasis in original). The court also noted that the second rule is "phrased in non-discretionary terms, which unambiguously call for application of locus law." Id. at 962. Based on the second *Neumeier* rule, the court affirmed the application of Chinese law with its limitation on damages. *Id.* See *also Dickerson v. USAir, Inc.*, 2001 WL 12009 (S.D.N.Y. 2001).

In *Miller v. Bombardier, Inc.*, 872 F. Supp. 114 (S.D.N.Y. 1995), the plaintiff was domiciled in Connecticut, the defendant in Canada, and the injury to plaintiff occurred in Canada. Canadian law significantly limited a tortfeasor's prospective liability for non-economic damages, but Connecticut law did not. *Id.* at 118. Applying the second rule, the court held that the place of injury governs; thus, the law of Canada limited the potential liability. *Id.*

In *Armstead v. National Railroad Passenger Corp.*, 954 F. Supp. 111 (S.D.N.Y. 1997), the plaintiff was domiciled in New York; the defendant, in the District of Columbia; and the accident was a slip and fall on property in Virginia. The issue was whether Virginia's contributory negligence rule would apply or New York's comparative negligence. The court considered the loss-allocating purpose of these rules and held that Virginia had "no substantive law interest in enforcing its rule when two non-domiciliaries are involved." *Id.* at 113. On the other hand, New York had a strong interest in favor of compensation for its domiciliaries. Accordingly, New York's comparative negligence law applied.

### 3. Plaintiff Towles' Claims Against Comair and Delta

Under the foregoing authorities, the second *Neumeier* rule applies to Plaintiff's claims against Comair. Plaintiff is a citizen of New York, which allows recovery for pre-impact damages. Comair is a citizen of Kentucky, which precludes recovery for pre-impact damages. Thus, "the local law of each litigant's domicile favors that party, and the action is pending in one of those jurisdictions." *Cooney*, 81 N.Y.2d at 76. Under *Neumeier, Cooney* and *Barkanic*, the law where the injury occurred and one of the parties is domiciled controls. *Neumeier*, 286 N.E.2d at 457-458; *Cooney*, 81 N.Y.2d at 73; *Barkanic*, 923 F.2d at 962 ("When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile"). Accordingly, the Court concludes that Kentucky law applies to Plaintiff Towles' pre-impact fear claim against Comair.

At first blush, Plaintiff's claim against Delta would appear to invoke the third *Neumeier* rule since the decedent was domiciled in New York; Delta's domicile is Georgia, and the accident occurred in Kentucky. Delta is the parent company of its wholly-owned subsidiary, Comair, Inc., which is a Delta Connection carrier. [Answer ¶7, DE #620; Towles' Response, p. 11]. Plaintiff's Second Amended Complaint does not allege any claim against Delta that is independent from the role of the Comair entities. See, e.g., Plaintiff's Second Amended Complaint [DE # 573] ¶¶ 12, 13, 14, 17, 21, 23, 25, 28, 31, and 32 ("COMAIR, SERVICES, AIRCRAFT, HOLDINGS and/or DELTA"). The crux of the complaint is an allegation of gross negligence on the part of the pilots for attempting to take off from the wrong runway. *Id.* ¶¶ 20, 21. Accordingly, under the facts of this case, there does not appear to be any basis for disregarding the domicile of the three Comair defendants when determining whether Kentucky or New York law should apply to Delta. Since the domicile of all three Comair entities is Kentucky, the second *Neumeier* rule results in application of Kentucky law to Plaintiff's claims.

### C. Plaintiff Harris' Claim

Plaintiff Harris relies on this Court's decision in *Republic Services, Inc. v. Liberty Mut. Ins. Co.,* 2007 WL 152102 (E.D.Ky. 2007) for its "most significant relationship" analysis of the choice of law issue. *Id.* at *2. That analysis in a contract case, however, does not apply to this tort case. *Adam v. J. B. Hunt Transport, Inc.*, 130 F.3d 219, 230 (6th Cir. 1997) (The conflicts question is determined "simply on the basis of whether Kentucky has enough contacts to justify applying Kentucky law"). In *Foster v. Leggett*, 484 S.W.2d 827 (Ky. 1972), the court said:

> When the court has jurisdiction of the parties, its primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reasons.

*Id.* at 829.

Plaintiff Harris suggests that "corporate conduct likely occurred also in Ohio and/or Georgia" and that there may be a false conflict if those states recognize Plaintiffs' claims. He fails to identify any valid reason to displace the law of the forum, however. Kentucky's contacts are that it is the principal place of business for Comair, it is the place of the injury, it is Plaintiff Harris' domicile and where he boarded the plane. Under *Arnett v. Thompson*, 433 S.W.2d 109 (Ky. 1968) and *Foster*, there are sufficient contacts to justify applying Kentucky law. In fact, when the accident is in Kentucky and the forum court sits in Kentucky, it "'should' apply Kentucky law." *Adam v. J. B. Hunt Transport, Inc.*, 130 F.3d 219, 231 (6th Cir. 1997). Accordingly, Kentucky law applies to Plaintiff Harris' claims, and they must be dismissed for the reasons discussed in this Court's opinion of January 3, 2008. *In re: Air Crash at Lexington, Kentucky, August 27, 2006*, 2008 WL 80059 (E.D. Ky. 2008).

### D. Plaintiff Hunt's Claim

Kentucky choice of law analysis also applies to Plaintiff Hunt's claim. He relies on the following contacts Mr. Brunacini had with New Mexico: his "primary residence, family, business investments and professional life were located in and around Albuquerque, New Mexico" and, at

the time of the crash, he "was traveling back to his home, family and businesses in New Mexico." [DE # 1358, p. 2]. He also points to Mr. Brunacini's choice of law provisions in his estate planning documents. [*Id.* at 3].

Plaintiff admits that Mr. Brunacini owned a horse farm in Kentucky and spent time in Kentucky, but says his relationship to Kentucky"was limited to his horse breeding avocation." *Id.* at 4. Plaintiff erroneously states that Comair's principal place of business was "Georgia"; in fact, it is Kentucky. [DE #1395, p. 2]. Plaintiff also misinterprets Kentucky's choice of law analysis as "applying the law of the state most invested in the outcome of a wrongful death action." *Id.* at 5. Plaintiff Hunt argues that the location of the crash was not a "significant" contact, but merely a "fortuitous contact." *Id.* at 5. As "valid reasons" for displacing Kentucky law, Plaintiff Hunt argues that in commercial aviation crashes, "the location of the injury or death is an insufficient reason to apply the law of the place of the crash." [DE #1449, p. 2].

Comair responds that Kentucky law recognizes "the fact that the accident occurred in Kentucky was, standing alone, enough contact to justify the application of the law of Kentucky." *Adam*, 130 F.3d at 231(quoting *Foster*, 484 S.W.2d at 829); *Arnett*, 433 S.W.2d at 113 ("if the accident occurs in Kentucky (as in the instant case) there is enough contact from that fact alone to justify applying Kentucky law"). It also notes that Kentucky has specifically rejected a balancing test or most significant contacts test in tort cases. [DE #1395, p. 8].

It is the opinion of this Court that Kentucky has sufficient significant contacts to justify application of Kentucky law to Plaintiff Hunt's claim. Comair's principal place of business and corporate headquarters are located in Kentucky. Mr. Brunacini owned a horse farm and conducted a horse breeding business in Kentucky. The crash occurred during takeoff from a Kentucky airport where Mr. Brunacini boarded the plane. The contacts with Kentucky were not merely fortuitous, but reflected intentional decisions on the part of both parties to associate themselves with Kentucky in a significant way. Accordingly, Kentucky law applies to Plaintiff's claim for hedonic damages.

### III. CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

A. Comair's Motion to Dismiss Damages claimed by the above Plaintiffs [DE #539] is **GRANTED IN PART** and **DENIED IN PART**.

B. Comair's Motion to Dismiss the above Plaintiffs' claims for loss of consortium and pre-impact fear is **GRANTED** for the reasons stated in this Court's Opinion of January 3, 2008. *In re: Air Crash at Lexington, Kentucky, August 27, 2006*, 2008 WL 80059 (E.D. Ky. 2008).

C. Comair's Motion to Dismiss the above Plaintiffs' claims for hedonic and loss of enjoyment of life damages is **DENIED** for the reasons stated in this Court's Opinion of January 3, 2008.

D. Plaintiff Hunt's Motion for Application of New Mexico Wrongful Death Damages Law to his claims [DE #1358] is **DENIED** .

This March 5, 2008.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**